Filed 5/31/23  In re O.T. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re O.T. et al., Persons Coming Under the Juvenile Court Law. | |
| | G061952 |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | (Super. Ct. Nos. 21DP0733, 21DP0734, 21DP0735, 21DP0736) |
| Plaintiff and Respondent, | O P I N I O N |
| v. | |
| J.S., | |
| Defendant and Appellant. | |

Appeal from orders of the Superior Court of Orange County, Isabel Apkarian, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

*          *          *

J.S. (Mother) appeals from the juvenile court's order in which it summarily denied her Welfare and Institutions Code[1] section 388 petition because she failed to make the requisite prima facie showing for an evidentiary hearing. The juvenile court described this as a "sad case." We agree. At the jurisdiction and disposition hearing, the court bypassed reunification services based on the prolonged physical abuse Mother knew her boyfriend inflicted on her four children, and the sexual abuse he perpetrated against her oldest daughter. The evidence showed Mother at best minimized this abuse.

Mother filed her section 388 petition as an "'escape mechanism'" to avoid a hearing on the termination of her parental rights. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) Unsuccessful, she now also challenges the court's ensuing order terminating her parental rights, claiming that the court's order denying her modification petition was erroneous.

As we explain, her relationships with her four children had not improved appreciably by the time Mother filed her modification petition to justify the relief she requested. Thus, the juvenile court did not err in concluding Mother failed to show a change in circumstances warranting an order for reunification services, let alone immediate return of the children to her care. Nor did she demonstrate that additional reunification services or returning her children to her would be in the best interests of the children, who were thriving in the care of their paternal grandmother and uncle. We therefore affirm the juvenile court's orders denying Mother's modification petition and terminating her parental rights.

_____

[1]     All further statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother's two daughters, O.T. and T.T., are now 16 and 8 years old, respectively, and her two sons, D.T. and N.T., are 12 and 7 years old. The children came to the attention of the Orange County Social Services Agency (SSA) in July 2021 when D.T., who was 10 years old at the time, received treatment at an emergency room for a bone fracture and bruises that Mother first attributed to a playground accident but later admitted were inflicted by her boyfriend (the boyfriend). Marks and injuries in various stages of healing all over D.T.'s body, including his face, ears, and neck, suggested repeated abuse.

All four children reported that the boyfriend "hit them with his hand and belt, . . . kick[ed] them, and [D.T.] reported being 'stomped' [on] by [the boyfriend]." All four children had similar marks and bruises on their bodies. The children confirmed Mother witnessed the abuse.

O.T. disclosed that the boyfriend sexually abused her by touching her vagina and requiring her to touch his penis. Mother acknowledged she knew about the abuse.

Mother disclosed a history of domestic violence perpetrated by the children's father and by the boyfriend, which the children also confirmed, as well as that their father beat them before he disappeared from their lives more than a year earlier.

Mother often left O.T. alone, at age 14, to care for her younger siblings. O.T. had been diagnosed with autism, as had her two youngest siblings, and D.T. suffered from Oppositional Defiant Disorder and Attention Deficit Hyperactivity Disorder. All four children experienced urinary and fecal incontinence; Mother sought no aid for them though they were receiving services at the Harbor Regional Center. The girls confirmed the boyfriend inflicted emotional abuse on both of them, including by requiring Mother to shave off O.T.'s long hair. The children showed signs of coaching to shield the boyfriend and Mother from culpability for their actions.

3

The juvenile court issued a protective custody warrant for the children in early July 2021 and, by early August, they moved from Orangewood to their paternal grandmother and uncle's home in Riverside where they felt safe. The children were elated that "[n]obody hurts us." The three older children did not want to see Mother, while N.T., the youngest, remained open to it.

Mother began participating in some services such as individual counseling, and parenting and domestic classes when she entered a domestic violence shelter in August 2021.

Against the children's wishes, monitored visitation began in September 2021. During the first visit, Mother had to be redirected from speaking to the children about either the boyfriend or their father (Father). She denied any responsibility to protect the children from the abuse they had suffered. T.T. did not attend the visit; the other children variously suffered enuresis or exhibited withdrawn or self-soothing behavior after the visit.

O.T. disclosed to her therapist that Mother and the boyfriend had agreed the boyfriend could have intercourse with O.T. once she turned 14 years old. Nevertheless, of the four children, O.T. was the only one who wanted to speak to Mother at that time.

Around the same time, Mother summarized as her take-away lesson from her participation in counseling services: "it's not my fault or my kids['] fault." Mother reported she saw no need for change, believing she had been "doing things right previously."

In November 2021, SSA learned Mother made multiple postings with confidential information on social media about the ongoing child welfare matter, including the caregiver's name and contact information and the social worker's cell phone number.

The children were enrolled in counseling services and their therapist reported that all four suffered from posttraumatic stress disorder (PTSD). The juvenile

4

court sustained child welfare jurisdiction over the children in December 2021, declined to open a formal reunification period with reunification services for Mother or Father, and set a permanency planning selection and implementation hearing under section 366.26 (.26 hearing). The court nevertheless authorized ongoing visitation and continued funding for the services Mother was receiving.

Mother visited the children regularly and without incident through March 2022 during the review period before the .26 hearing. Mother's therapist reported that while Mother expressed her love for the children, she struggled to gain stability. She was transient and failed to follow through on resources provided by the therapist, who questioned whether Mother was able to care for the children. The therapist reported Mother had been diagnosed with PTSD and was on the autism spectrum.

The therapist believed Mother should engage in further psychological testing, and assessment was necessary "to get a clearer picture of [her] mental health." Nonetheless, by May 2022, the therapist closed the counseling referral because she had not heard from Mother who "'completely dropped out.'" Both the therapist and a parent mentor who had worked with Mother believed she may have been involved in prostitution.

Meanwhile, the children's therapist believed they had made significant improvements. They continued to thrive in their placement with their paternal grandmother and uncle, who were committed to adopting them. The older children expressly stated their desire to be adopted, and the younger two stated that—given the chance to live anywhere in the world—they would choose to live where they were in their new home.

Mother failed to appear at four visits between late April and May 2022; she missed five additional visits in June and July and was absent from three visits in August. One child disclosed Mother shoplifted during a visit, and one or more of the children

declined visits that did occur.  By late September, virtual visits also began to decline due to Mother missing calls and the children refusing to speak with her.

Mother filed an initial petition under section 388 in early August 2022, which the juvenile court found did not merit an evidentiary hearing.  Mother filed a new petition—the petition under review in this appeal—later that same month.  That petition again requested modification of the dispositional order to reorient the matter towards reunification.  Specifically, Mother asked the court to open a formal reunification period by ordering reunification services or, alternatively, to return the children to her care immediately.  Both forms of relief would obviate the pending .26 hearing.

Mother claimed "substantial progress" warranted the change because she had "completed counseling services."  She also based her petition on her completion of parenting classes, participating in a parent empowerment class, and counseling on an individual basis related to domestic violence, and "complet[ing] 43 out of 52 classes with [the] Child Abusers Program."  Mother asserted that "[w]ith more services and counseling between the children they will be better off in the future [by] being with their biological mother."

The juvenile court acknowledged Mother had completed the child abusers program by the time of the hearing on the petition.  But the court also observed Mother continued to "struggl[e] with her own mental illness and issues," and "at the end of the day, . . . what the law requires me to do when considering granting an evidentiary hearing on a 388 [petition is] to look at whether the circumstances are changed."

The court found they were not:  "while Mother has . . . completed her child abuser's program, I'm very troubled by the reports of the visitation, lack of visitation, and [her] behavior towards the children.  So when we're talking about 'changed' versus 'changing' [circumstances], the stability and the mental health issues for Mother remain the same such that I do not find it's in the children's best interest to grant an evidentiary hearing in this matter."

6

## DISCUSSION

We review a juvenile court's summary denial of a section 388 petition without an evidentiary hearing under the abuse of discretion standard. (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 711.) This standard is "highly deferential to the decision maker," requiring "a showing that the decision was 'so irrational or arbitrary that no reasonable person could agree with it.'" (*In re M.L.* (2012) 205 Cal.App.4th 210, 228.) Mother does not meet that high burden.

"Section 388 allows an interested person to petition the juvenile court for a hearing to change, modify or set aside a previous order . . . . The burden of proof is on the petitioner." (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423.) "The parent seeking modification must 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation]' [Citations.] There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, *and* that (2) revoking the previous order would be in the best interests of the child[ ]." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250, italics added (*Anthony W.*).)

"The prima facie requirement [for a hearing] is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189 (*Justice P.*).)

"While the petition must be liberally construed in favor of its sufficiency [citation], the allegations must nonetheless describe *specifically* how the petition will advance the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157, italics added.) Mother's petition faltered, at a minimum, on this prong. She relied largely on the undisputed fact she was the children's birth mother, but any "presumption

favoring natural parents by itself does not satisfy the best interests prong of section 388." (*Justice P.*, *supra*, 123 Cal.App.4th at p. 192.)

Once the juvenile court "has . . . terminated reunification services and set the matter for a section 366.26 hearing, the focus of the case shifts from the parents' interest in the care, custody, and companionship of the child to the needs of the child for permanency and stability." (*In re N.F.* (2021) 68 Cal.App.5th 112, 121.) "[A] parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

Mother's petition never crossed the best interests threshold. She did not visit the children regularly; the children fared poorly when she did visit; they largely did not want her to visit; and they were thriving in their placement. Mother provided no evidence it would be in the children's best interests to disturb the stability, permanency, and safety they were entitled to—and craved.

Mother's showing was inadequate on the first prong as well. "'[C]hanged circumstances'" means that the problems leading to the dependency have been resolved or eliminated. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 592.) The requisite "change in circumstances must be substantial." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) Allegations in a petition that are unsubstantiated or conclusory are insufficient to warrant a hearing. (*Anthony W.*, *supra*, 87 Cal.App.4th at pp. 250-251.)

Mother gave no indication she recognized her responsibility to protect her children or had learned means or methods to do so. Her own therapist questioned her abilities in this regard, and rather than presenting evidence in her petition to offset this concern, Mother discontinued counseling altogether. While this was indeed, as the juvenile court observed, "a sad case" given the challenges Mother faced and the horrifying abuse inflicted on the children, "'[c]hildhood does not wait for the parent to

8

become adequate.'" (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)  The juvenile court did not abuse its discretion in denying Mother's modification petition.

## DISPOSITION

The juvenile court's orders denying Mother's modification petition and terminating Mother's parental rights are affirmed.


                              GOETHALS, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.


9